IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRIS BROWNFIELD, o/b/o A.M.B. )
　　　　　　　　　　　　　　　　 )
　　　　Plaintiff, 　　　　　　　　 )
　　　　　　　　　　　　　　　　 )
　-vs- 　　　　　　　　　　　　　 )　　Civil Action No. 13-1090
　　　　　　　　　　　　　　　　 )
CAROLYN W. COLVIN,[1] 　　　　　 )
COMMISSIONER OF SOCIAL SECURITY, )
　　　　　　　　　　　　　　　　 )
　　　　Defendant. 　　　　　　　 )

AMBROSE, Senior District Judge.

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are a Motion for Judgment on the Pleadings filed by the Plaintiff and a Motion for Summary Judgment filed by the Defendant. ECF Nos. [8] and [12]. Both parties have filed Briefs in Support of their Motions. ECF Nos. [9] and [14]. The Plaintiff also filed a Reply Brief. ECF No. [15] After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Plaintiff's Motion for Summary Judgment ECF No. [8] insofar as Plaintiff has requested a remand, and denying Defendant's Motion for Summary Judgment, ECF No. [12], as set forth below.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying an application for supplemental security income brought on behalf of her daughter, a child under the age of 18, pursuant to the Social Security Act ("Act"). More specifically, On July 20, 2010, Chris Brownfield ("the Mother") protectively

---

[1] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.

1

filed for supplemental security income on behalf of her daughter, alleging a disability beginning on January 1, 2008. The application was denied and was followed by hearings on January 4, 2012 and March 13, 2012. Both the Mother and the daughter testified at the hearings. The Administrative Law Judge ("ALJ") issued a written decision denying the claim on April 19, 2012. Following the exhaustion of administrative remedies, the Mother filed this appeal.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. §706.

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner follows a three-step sequential process in

determining childhood disability: (1) whether the child is doing substantial gainful activity; (2) if not, whether he has a medically determinable severe impairment; (3) if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. § 416.924(d), 20 C.F.R. § 416.924. An impairment functionally equals a listed impairment if the child has "marked" limitations[2] in two domains of functioning or an "extreme" limitation[3] in one domain. 20 C.F.R. § 416.926(a). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(iv). When evaluating the ability to function in each domain, the ALJ considers the following: whether the impairment(s) affect the claimant's functioning and whether the claimant's activities are typical of other children of the same age who do not have impairments; the activities that the claimant is able to perform; activities that the claimant is unable to perform; which of the claimant's activities are limited or restricted compared to other children of the same age who do not have impairments; where the claimant has difficulty independently initiating, sustaining, or completing activities; and what kind of help the claimant needs in order to do activities, including how much and how often help is needed. 20 C.F.R. § 416.926a(b)(2)(i)-(vi).

In this case, the ALJ found that the Claimant has not engaged in substantial gainful activities and has severe impairments.[4] (ALJ's Op., ECF No. [6], p. 18). Nevertheless, she determined that the Claimant did not have an impairment (or combination of impairments) that meets or medically equals the severity of a set of criteria for an impairment listed in 20 C.F.R.

---

[2] A "marked" limitation "seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).
[3] An "extreme" limitation "very seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3).
[4] The ALJ found the Claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); history of oppositional defiant disorder ("ODD"); and language based learning disorder.

§§ 416.924(d), 416.925 and 416.926. Specifically, The ALJ found that the Claimant experienced "mild limitations in activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and as for episodes of decompensation, the claimant has experienced no episodes of decompensation." (ALJ's Op., ECF No. [6], p. 8). Additionally, the ALJ concluded that the Claimant did not have an impairment or combination of impairments that functionally equals the severity of the listings. As a result, the ALJ found that the Claimant was not disabled under the Act. (ALJ's Op., ECF No. [6], p. 18).

B. **DISCUSSION**

On appeal, the Claimant challenges the ALJ's decision in several respects. First, the Claimant urges that the ALJ failed to give proper consideration to her teachers' opinions. Second, according to the Claimant, the ALJ neglected to follow the treating physician rule. Finally, the Claimant insists that the ALJ did not give any explanation for failing to give the testimony she and her mother offered at the hearing full credibility. I will address the arguments seriatim.

*1) The ALJ's Consideration of the Opinions of the Claimant's Teachers*

The record contains Teacher Questionnaires completed by the Claimant's 5th and 6th grade teachers, Ms. Herndon and Ms. Bender. These are the types of documents an ALJ should consider. *See* 20 C.F.R. § 416.924(b)(7)(ii). The Regulations provide that "if you go to school we will ask your teacher(s) about your performance in your activities throughout your school day. We will consider all the evidence we receive from your school, including teacher questionnaires, teacher checklists, group achievement testing, and report cards." 20 C.F.R. § 416.924(b)(7)(ii). The Claimant contends that the ALJ failed to give these Questionnaires proper consideration in arriving at her conclusion to deny benefits. Specifically, the Claimant urges that the ALJ failed to weigh the opinions of the teachers pertaining to the Claimant's

4

ability to: (1) acquire and use information; (2) attend and complete tasks; and (3) attend to personal care. The Claimant argues that the ALJ failed to explain how, if at all, the Teacher Questionnaires were used in arriving at the conclusion regarding functional domains and, as such, a remand is required.

        (a)    Acquiring and Using Information

When evaluating "acquiring and using information," an ALJ must "consider a child's ability to learn information and to think about and use the information." SSR 09-3p, 2009 SSR LEXIS 3; 20 C.F.R. § 416.926a(g*); see also* Fabery v. Astrue, 2012 U.S. Dist. LEXIS 94148, * 40 (W.D. Pa. July 9, 2012) (Cercone, J.). The Social Security Regulations explain what children without limitations should be able to do and provide guidance in this regard. Here, the claimant was 12[5] at the time the application of benefits was filed and 13[6] at the time of the hearing. Because the claimant moved from one age group to another during the course of this appeal the

---

[5] In terms of "acquiring or using information," the Social Security Regulations indicate that school age children (those age 6-12) "should be able to read, write, and do math, discuss history and science." 20 C.F.R. 416.926a(g)(2)(iv). Further, the child should be able to take the information and be able to demonstrate what she has learned "by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." 20 C.F.R. § 416.926a(g)(2)(iv). Similarly, the child should be able to "use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change)" as well as be able "to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing … ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a(g)(2)(iv).

[6] The Regulations differ slightly with respect to adolescents (age 12-18). The Regulations provide that "[i]n middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)." 20 C.F.R. § 416.926a(g)(2)(v). The Social Security Regulations provide some examples of limitations in the domain of acquiring and using information (though the examples cover a range of ages and developmental periods and are not necessarily characterized as "marked" or "extreme"): a lack of understanding of words about space, size, or time; the inability to rhyme words or the sounds in words; difficulty recalling important things learned in school the day before; difficulty solving mathematics questions or computing arithmetic answers; speaking only in short, simple sentences and difficulty conveying meaning. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

ALJ cited to both Regulations.

Ultimately, ALJ concluded that the Claimant had less than "marked" limitation in acquiring and using information. As stated above, the Claimant urges that, in so concluding, the ALJ failed to properly consider the opinion of the Claimant's teachers, Ms. Herndon and Ms. Bender. Ms. Herndon, the Claimant's 5th grade teacher, completed a Teacher Questionnaire. (R. 209-216). She reports that Claimant was at a 2.0 grade reading level, a 5.9 grade math level and a 3.5 grade written language level. (R. 209). With respect to "acquiring and using information," Ms. Herndon noted that the Claimant had "a very serious problem" in three of the ten categories.[7] (R. 210). She described the Claimant as having "an obvious problem" in four of the ten remaining categories.[8] (R. 210). In contrast, Ms. Herndon found the Claimant to have only "a slight problem" with respect to the final three categories.[9] (R. 210). Ms. Herndon also wrote that the Claimant "has serious problems in comprehension, oral reading and language. She is dependent totally on help with Reading. She has a higher ability of computation and number skills. Her mathematics skills range slightly higher than Reading." (R. 210).

The Claimant had Ms. Bender for 19 days of Sixth Grade at the time Ms. Bender completed the Teacher Questionnaire. (R. 218). Ms. Bender noted an "obvious" problem only with respect to the Claimant's ability to read and comprehend written material. (R. 219). She assessed the Claimant as having only a "slight problem" in eight of the ten categories.[10] (R. 219). ). Finally, she noted "no problem" concerning the Claimant's ability to comprehend oral

---

[7] Ms. Herndon rated the Claimant as having a "very serious problem" in comprehending oral instructions, understanding school and content vocabulary, and reading and comprehending written material.
[8] Those categories were: understanding and participating in class discussions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions.
[9] Those categories were: comprehending and doing math problems, providing organized oral explanations and adequate descriptions, and expressing ideas in written form.
[10] Those categories were: understanding school and content vocabulary; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem-solving skills in class discussion.

instructions. (R. 219).

In reviewing the ALJ's decision, it is clear that she did consider the teacher evaluations. *See* (R21, stating "the teacher questionnaires from Clairton either indicate serious problems in this area or only slight."). Yet it is impossible from this singular reference to the questionnaires to determine whether the ALJ accepted them as persuasive evidence or rejected them as contradicted by other evidence of the record. It could be, as the Government suggests, that the ALJ read the Questionnaires to indicate that the Claimant improved between the 5th and 6th grade and that Ms. Bender's marks thus show a decline in the seriousness of impairments as compared to those noted by Ms. Herndon. Or it could be that the ALJ discounted Ms. Bender's marks because she evaluated the Claimant after only 19 days of school. Simply stated, I cannot discern how the ALJ reconciled the Teacher Questionnaires with each other or with the other evidence based upon her brief remark.

The point is significant. An ALJ is required to set forth his or her reasons for rejecting evidence which supports a claimant's allegations of disability. *See Raefer v. Barnhart*, 326 F.3d 376, 381-82 (3d Cir. 2003). *See also Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (stating, "It is more than merely 'helpful' for the ALJ to articulate reasons … for crediting or rejecting particular sources of evidence. It is absolute essential for meaningful appellate review." (internal citation omitted). In *Boruff v. Astrue*, 648 F. Supp.2d 932, 942 (E.D. Mich. 2009), the Court remanded the case for further consideration where the ALJ failed to discuss a teacher questionnaire filled out by the claimant's second grade teacher which supported a finding that the claimant had a serious or very serious problem in the domain of acquiring and using information.

Clearly the instant case differs from that in *Boruff* because here, the ALJ did explicitly acknowledge the questionnaires. Yet, as stated above, it is uncertain what weight, if any, she gave them. I cannot discern whether she found them supportive of the Claimant's contention,

7

supportive of the Government's contention, or inconsistent with one another. Simply stated, the ALJ does not explain her position at all.

Ms. Herndon's report could be read to support the Claimant's allegations of functional equivalence. She found the Claimant to have a "very serious problem" in three out of ten categories in "acquiring and using" information. This finding could be used to support a conclusion that the Claimant suffered from at least a "marked" limitation in the ability to "acquire and use" information. *See* 20 C.F.R. § 416.926a(e)(3) (stating that, "[a]n extreme limitation 'very seriously' interferes with a claimant's ability independently to initiate, sustain, or complete activities."). *See also Hart v. Colvin*, Civ. No. 12-196, 2014 WL 266808 at * 7 (W.D. Pa. Jan. 23. 2014) (Cohill, J.) (stating that "The two teachers each indicated that C.L.C. had 'serious' problems in three out of ten categories relevant to the domain of 'acquiring and using information.' … Under the Commissioner's regulations, an impairment that 'seriously' limits 'only one activity' can sometimes be used to demonstrate that a claimant is 'markedly' limited in a given domain.").[11]

(b)  Attending and Completing Tasks

When evaluating "attending and completing tasks," an ALJ will consider how well a claimant is able to focus and maintain attention, and how well a claimant begins, carries through and finishes activities, including the pace at which the claimant performs the activities and the ease with which he or she changes them. See 20 C.F.R. 416.926a(h). Again, the Claimant straddles two different age groups here and the ALJ referenced both of them.[12] (R. 22) The ALJ

---

[11] In Hart, the Court noted that although the teacher's reports could potentially establish that the claimant was markedly limited in this domain, they would not demonstrate that the claimant was disabled because functional equivalence requires marked limitations in two domains. In Hart, the teacher reports did not establish a second "marked" limitation. In contrast, one could argue that Ms. Herndon's Teacher Questionnaires do. Indeed, the ALJ did find that the Claimant had "marked limitation in interacting and relating with others." (R. 24).

[12] The Regulations provide the following for "school age children" (those ages 6-12): "When you are of school age, you should be able to focus your attention in a variety of situations in order to follow

8

concluded that the Claimant had less than marked limitations in attending and completing tasks. The Claimant urges that this conclusion must be rejected because the ALJ did not give proper consideration to the Teacher Questionnaires.

Ms. Herndon found that the Claimant had "very serious problems" in one out of thirteen categories and a "serious problem" in five out of the thirteen categories. (R. 211). Thus, under the Regulations the Claimant arguably has "marked" limitations in more than half the categories being assessed for this domain, per Ms. Herndon's conclusions. Ms. Bender, in contrast, did not find the Claimant to have anything more than an "obvious problem" in two of the thirteen categories. She assessed the Claimant as having a "slight problem" in five of the thirteen categories and "no problem" in the remaining six categories.

As before, the ALJ devotes one sentence to the Teacher Questionnaires ("Again, teacher questionnaires either indicate significant problems … or only slight difficulties in this area….") (R. 23). The ALJ makes absolutely no discernable credibility assessment. She does not state whether she finds one or both of the Questionnaires persuasive, or whether she finds them consistent with each other or with other evidence. Indeed, Ms. Herndon's findings could support a conclusion that the Claimant has a "marked" limitation in this domain. The ALJ has already found her to suffer from a marked limitation in another domain (and Ms. Herndon's

---

directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change your clothes after gym, change classrooms) without extra reminders and accommodation." 20 C.F.R. § 416.924a(h)(2)(iv). The Regulations change slightly for Adolescents (ages 12 -18): "In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting." 20 C.F.R. § 416.924a(h)(2)(v).

responses to the questionnaire provide support for another), so, because the Questionnaires provide evidence of another "marked limitation," this could arguably support a conclusion of functional equivalence. Simply stated, without any substantive discussion by the ALJ of the teacher questionnaires, I cannot provide a meaningful appellate review.

(c) Caring for Oneself

When evaluating "caring for oneself," the Regulations indicate that an ALJ will consider how well a Claimant maintains a healthy emotional and physical state, including how well he or she gets physical and emotional wants and needs met in appropriate ways; how well he or she copes with stress and changes in environment; and whether he or she takes care of their own health, possessions and living area. *See* 20 C.F.R. § 416.924a(h)(2)(k). The Regulations set forth the group age descriptors.[13] Referencing those group age descriptors, the ALJ concluded that the Claimant had less than marked limitation in the ability to care for herself. (R. 27). In reaching this conclusion, the ALJ also devoted a partial sentence to the questionnaires regarding the Claimant's ability to care for herself (R. 27, stating that the "Teacher questionnaires indicate either some slight or obvious problems in this domain….").

Again, the Claimant contends that the ALJ's treatment of the Teacher Questionnaires is insufficient. I agree, largely for the reasons set forth above. With respect to "caring for oneself,"

---

[13] School-age children (age 6 to attainment of age 12). You should be independent in most day-today activities…, although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know. 20 C.F.R. § 916.024a(k)(2)(iv).Adolescents (age 12 to attainment of age 18). You should feel more independent from others and should be increasingly independent in all of your day-to-day activities. You may sometimes experience confusion in the way you feel about yourself. You should begin to notice significant changes in your body's development, and this can result in anxiety or worrying about yourself and your body. Sometimes these worries can make you feel angry or frustrated. You should begin to discovering appropriate ways to express your feelings, both good and bad. … You should begin to think seriously about your future plans, and what you will do when you finish school. 20 C.F.R. § 916.924a(k)(2)(v).

Ms. Herndon's describes the Claimant as suffering from "marked limitations" in two of the ten categories. (R. 214). Ms. Bender found the Claimant to suffer from nothing more than a "slight" problem in this domain. Significantly, the ALJ's reference is partially incorrect. Though Ms. Bender may have found only a "slight" problem, Ms. Herndon found "marked" problems rather than "obvious" problems. Her conclusions in this regard may support a finding of functional equivalence for the reasons set forth above.

In sum, the ALJ's decision prevents this Court from providing an adequate review. "When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding." *Jonson v. Colvin*., Civ. No. 12-1742, 2013 WL 1314781 at * 4 (W.D. Pa. March 28, 2013) (J. Schwab) (stating that "[t]he ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the Court to determine whether any rejection of potentially pertinent, relevant evidence was proper.") (citations omitted). The ALJ did not meet her responsibilities in this regard. Consequently, a remand is required. Upon remand, the ALJ is directed to provide a full and complete discussion of the Teacher Questionnaires in keeping with the analysis set forth above.[14]

### 2) The Claimant's Treating Physicians

It is undisputed that "a longtime treating physician's opinion carries greater weight than that of a non-examining consultant…." *Brownawell v. Comm'r. of Soc. Sec*., 554 F.3d 352, 357 (3d Cir. 2008), *citing, Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir., 2000). "An ALJ may reject a

---

[14] The question is not, as the Government frames it, whether substantial evidence supports the ALJ's conclusion that the Claimant had less than a "marked limitation" in any one of the domains. Were that the question before me, I may have reached a different conclusion. The question posed by the Claimant on appeal is whether the ALJ properly considered the opinion proffered by the teachers. As set forth in the body of this Opinion, I cannot discern from the ALJ's decision whether any such consideration was proper.

treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir), *citing, Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1984). According to the Claimant, the ALJ failed to follow these dictates in making the evaluation regarding "attending and completing tasks."

The ALJ did consider the Claimant's treating physician in evaluating whether she had a marked limitation in attending and completing tasks. The ALJ noted that "Dr. Algaier has assessed the claimant with marked limitation regarding attending and completing tasks, but he also indicated that she has only moderate limitation with respect to deficiencies of concentration, persistence, or pace. Dr. Algaier's treatment records also indicated significant improvement in the claimant's functioning in this area, with Concerta." (internal citation omitted). (R. 23). In addition, Dr. Algaier's notes indicate that "Concerta has made some impact." (R. 427). That report is dated December 12, 2011. In an examination for a medication check dated January 12, 2012, Dr. Algaier observed that the Claimant's "[c]oncentration is better (40-50%) versus 10% prior to taking medication." (R. 430). Again, on February 23, 2012, Dr. Algaier noted in a checkup that the Claimant "feels the Concerta increase last month has helped improve focus and concentration." (R. 431).

The state agency review physician, Dr. Rattan, opined that the Claimant suffered less than marked impairment in her ability to attend and complete tasks. (R. 340). Specifically, referencing Dr. Cohen's findings, Dr. Rattan observed that the Claimant had been diagnosed with ADHD and that her "current teacher reports an obvious problem carrying out multi-step instructions and completing work accurately w/o careless mistakes. Her previous teacher reported serious problems in several areas within this domain and stated 'she is quick to give up when she encounters a problem;' 'her attention span is minimal especially in reading but she is

12

able to work independently in math'." (R. 340).

When taken at face value, I do not find that the ALJ ran afoul of the treating physician rule. First, when Dr. Algaier remarked that the Claimant had "marked limitations," he had only treated her personally on one occasion and it was at that time that he prescribed Concerta. The second and third treatment notes, wherein he observed an improvement in focus and concentration, after the Claimant began taking the prescription. So, although Dr. Algaier was a "treating physician," attaching the label of a "long time treating physician" and the deference accorded thereto may be inappropriate. Further, the ALJ's decision is supported by other substantial evidence in the record, namely evidence from Dr. Rattan and Dr. Cohen.

I am reluctant, however, to affirm the ALJ's decision at this procedural juncture. As stated above, this case is remanded for further consideration of the Teacher Questionnaires and the impact those may have on the ALJ's conclusion, inter alia, regarding the Claimant's functional limitations with respect to attending and completing tasks. It may be that upon further review of the Teacher Questionnaires the ALJ reaches a different conclusion regarding the Claimant's functional limitation in the domain of attending and completing tasks. As such, in the context of the remand, the ALJ is directed to also consider whether the evaluation of the Teacher Questionnaires impacts her assessment of Dr. Algaier's reports.

### 3. *Credibility Assessment of the Claimant and her Mother*

Finally, the Claimant alleges that the ALJ erred in assessing both her and her mother's testimony. She urges that they both offered testimony which, if credited, undermines the ALJ's conclusion that she did not have marked impairments in acquiring and using information, attending and completing tasks, and caring for herself and others. The Claimant reasons that substantial evidence of record, including Dr. Algaier's treatment notes and opinion as well as the Teacher Questionnaires, support their testimony.

The ALJ found that "the statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with findings that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." (R. 19). The ALJ made several additional specific findings as to credibility, and how both the Claimant's and her mother's testimony was inconsistent with other record evidence. For instance, the Claimant and her mother urged that the Claimant struggled with acquiring and using information, yet the ALJ noted that the Claimant had successfully completed a gun safety class. (R. 21). Additionally, although both the Claimant and mother testified concerning the Claimant's attention difficulties and the corresponding low grades in school, the Claimant admitted that she did not study for her classes and the ALJ noted as much. (R. 21). Further, there was inconsistent testimony in the record regarding who "tutored" the Claimant (i.e., the Claimant's mother or a cousin). (R. 21). The ALJ noted that the mother claimed to be on SSI, but also represented in writing on a previous occasion that she worked full-time at a Uni-Mart. (R. 21). The Mother urged that the Claimant's medical condition caused her to stay up all night, yet the record contained testimony from the Claimant that she stayed awake because she found sleep "boring" and she did not like to take her medication. (R. 25). Further, although the Mother argued that the Claimant was limited in the ability to care for herself, there was record evidence that the Claimant was able to care for 3 dogs and a cat; that she cleaned up the yard after the dogs and that she cleaned up her own room independently. (R. 27).

In light of this substantial evidence, I cannot conclude that the ALJ erred in her assessment of the Claimant's and the Claimant's mother's credibility. Again, however, I am remanding this case for further consideration of the Teacher Questionnaires. It may be that the ALJ's consideration of this evidence calls into question her findings regarding the credibility of the Claimant and the Claimant's mother. One conclusion may cast a doubt upon another. Consequently, the ALJ is directed upon remand to consider whether the evaluation of the

14

Teacher Questionnaires impacts her prior assessment of the Claimant's and the mother's credibility.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRIS BROWNFIELD, o/b/o A.M.B., )
)
    Plaintiff, )
)
-vs- ) Civil Action No. 13-1090
)
CAROLYN W. COLVIN,[15] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## ORDER OF COURT

THEREFORE, this 22nd day of May, 2014, it is ordered that the decision of the ALJ is vacated and remanded and Plaintiff's Motion for Summary Judgment (Docket No 8.) is granted in part and denied in part and Defendant's Motion for Summary Judgment (Docket No.12) is denied.

                BY THE COURT:

                s/ Donetta W. Ambrose
                Donetta W. Ambrose
                United States Senior District Judge

---

[15] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.